MARY C. PADDOCK & others *vs.* OLIVER WALLACE.

Middlesex.    January 18. — 19, 1875.    AMES & ENDICOTT, JJ., absent.

Land was granted to the defendant, "his heirs and assigns forever, to the use and upon the special trust and confidence, and for no other purpose whatsoever," that the defendant should furnish the grantor with support suitable to her condition in life, proper attendance in sickness, and at her decease proper burial and burial services. The deed also contained a covenant of the grantor with the defendant, "his heirs and assigns, that he and they, for whose use the premises are granted, provided they observe the terms and conditions of the grant, shall forever hold the premises free of all claim on behalf of me or my heirs." *Held*, that the defendant, after the death of the grantor, held the land in fee simple, free from any resulting trust to the heirs of the grantor.

BILL IN EQUITY by the heirs at law of Caroline M. Hinckley, widow, late of Somerville, deceased, intestate, alleging the following facts :

On July 9, 1872, the said Caroline M. owned in fee a certain parcel of land in Somerville, and was then living in her house with the defendant and his family, who furnished her with board in payment of rent.

On that day, at the request of the defendant, she conveyed said parcel of land to him by deed, in consideration of ten dollars and " other good causes and considerations : "  " To have and to hold the aforegranted premises to him the said Oliver Wallace, his heirs and assigns forever, to the use and upon the special trust and confidence as follows, and for no other purpose whatsoever ; that is to say, that the said Oliver Wallace and his heirs and assigns shall and will from henceforth and during the natural life of the said Caroline M. provide for and furnish her with a suitable and comfortable support according to her degree and condition in life, suitable wearing apparel, and such comforts, privileges and conveniences as she has been accustomed to have and enjoy, furnish her in sickness with proper medical aid and attendance, suitable nursing and care, and at her decease give her such burial and burial services as would be proper to a person of her said degree and condition.    And I do covenant with the said Oliver Wallace, his heirs and assigns, that he and they, for whose use the premises are granted, provided they observe the terms and conditions of the grant, shall

forever hold the premises free of all claim on behalf of me or my heirs."

The bill alleged that by the true construction of the deed the trusts therein declared were only for the life of Caroline M., and that the defendant claimed that the trusts in said deed declared were for the use of himself and his heirs, subject only to providing support for Caroline M. during her life, and fulfilling the other requirements therein specified, and claimed to hold said estate in fee and discharged of the trust.

The prayer of the bill was that the trust be declared at an end, and that the defendant be directed to convey the estate to the plaintiffs in fee in final execution and completion of the trust.

The answer admitted the execution of the deed, and set up that by the death of Caroline M. the estate became vested in the defendant in fee.

Hearing upon the bill and answer, before *Devens*, J., who reserved the case for the consideration of the full court upon the question whether the defendant had any and what beneficial interest under the deed, or was merely a trustee, and bound to account for the rents and profits, and after the death of Caroline M. to convey to her heirs at law.

*F. V. Balch*, for the plaintiffs. 1. The construction should be favorable to the plaintiffs. It needs express terms to disinherit an heir in a will, and clear evidence of the intent ought to be required from one claiming against the heir under such an instrument as this. The rule that language of a grant is to be taken most strongly against the grantor cannot apply till it is established that there is a beneficial grant of some sort intended. It cannot apply to enlarge the estate of a mere trustee, nor affect the decision of the question whether the grantee is a mere trustee or not.

2. The deed creates a trust, and conveys no larger estate than requisite to carry out the trust. The habendum "to the use and upon the special trust and confidence as follows, and for no other purpose whatsoever," is a precise and clear statement in correct legal form. The language, "for no other purpose whatsoever," is so inconsistent with the construction sought to be placed on the deed by the defendant that it suggests that the

grantor, detecting a sinister purpose, insisted upon this expression to close all question. If the deed creates a trust, and if the respondent was made a trustee by it, his estate must be just so large and no larger than the purposes of the trust require. *Cleveland* v. *Hallett*, 6 Cush. 403. No covenant, therefore, can operate to enlarge the estate granted.

3. Where a trust is declared which does not exhaust the subject matter of the grant, there is a resulting trust in favor of the grantor and his heirs, unless a contrary intent clearly appears. *Easterbrooks* v. *Tillinghast*, 5 Gray, 17. Story's Eq. Jur. § 1200. Hill on Trustees, 118. Perry on Trusts, § 152. The only words which can be supposed to indicate any intent that the grantee shall take beneficially, are those in the covenant. No inference of such intent can justly be drawn from the language of the covenant. It runs to the heirs of the defendant, for the trust may outlast his life; it binds the grantor's heirs, for the trust may outlast her life, since it provides for her burial. It speaks of assigns, for there might be successors in the trust other than heirs. The words " he and they " (the defendant and his heirs and assigns,) " for whose use the premises are granted," distinctly refer to the granting part of the deed. The word " use " occurs in the granting part, and is there used technically, and it is presumably so used here. In the ordinary form the grantor conveys to the grantee for the grantee's own use, and this use being supposed to be executed by the statute of uses, then comes the superadded trust which cannot be executed by the statute. So here the words " for whose use the premises are granted " mean nothing more than " to whom " the premises are granted. " Provided they observe the terms and conditions of the grant " is equivalent to " so long as they faithfully carry out the trust of supporting one from the rents and profits." These ambiguous words cannot outweigh the clear declaration in the grant that the premises are conveyed " for no other purpose whatsoever." If conveyed for the personal benefit of the grantee, is not that a " purpose " other than the grantor's support and burial ?

There is nothing in the surrounding circumstances to favor the defendant's view. There was no relationship, and nothing but a business connection, between the grantor and grantee. No case goes so far as *Cook* v. *Hutchinson*, 1 Keen, 42, and in that case

the intent was clear, the grantee was a son, the grantor recited his intent to settle his estate on all his children, and if there had been a resulting trust the son would have been wholly unprovided for.

*A. A. Ranney & D. F. Crane*, for the defendant, were not called upon.

BY THE COURT. The final covenant, taken in connection with the rest of the deed, shows that the intention was to pass a fee.

*Bill dismissed, with costs.*

---

ANDREW J. PERHAM & another *vs.* CHARLES W. H. CONEY.

Middlesex. January 18. — 19, 1875. AMES & ENDICOTT, JJ., absent.

If one hires a horse to go to a certain place and drives him beyond that place, it is a conversion, and the hirer is liable for any subsequent diminution in the value of the horse, although arising from the fault of the horse.

A hirer of a horse and carriage for a time and distance not fixed or agreed upon is responsible for any injury to the horse and carriage caused by his want of ordinary care and skill; but is not responsible for an injury to them caused by an insufficiency of the harness or the fault of the horse.

TORT for negligence in the use of a horse and carriage hired by the defendant of the plaintiffs; with a count for the conversion of the same.

At the trial in the Superior Court, before *Brigham*, C. J., the plaintiffs' evidence tended to show that they were keepers of a livery stable in Wakefield, and let the horse and carriage to the defendant to go to Lynnfield Centre; that the defendant drove beyond Lynnfield and went to Peabody, and that the horse and carriage were returned in a damaged condition.

The defendant's evidence tended to show that he hired the horse and carriage without stating where he was going; that he tied the horse to a fence in Peabody by the guiding rein, the plaintiffs not furnishing him with a hitching strap or other fastening, and that the horse had a fit or the blind staggers, and this caused the injury complained of. It also appeared that the defendant had but one arm, and that the plaintiffs knew this fact when they let the horse.